IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRISON PETERSON, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO._____ |
| | § | |
| BIOMET ORTHOPEDICS, LLC; | § | |
| ZIMMER BIOMET HOLDINGS, INC.; | § | |
| BIOMET MANUFACTURING CORP.; | § | |
| BIOMET U.S. RECONSTRUCTION, LLC, | § | |
| and BIOMET, INC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW Plaintiff, HARRISON PETERSON, JR., and for his Complaint against Defendants, BIOMET ORTHOPEDICS, LLC; ZIMMER BIOMET HOLDINGS, INC.; BIOMET MANUFACTURING CORP.; BIOMET U.S. RECONSTRUCTION, LLC; and BIOMET, INC., alleges and states as follows:

**NATURE OF ACTION**

1. This is a product liability case involving a defective knee implant system. Plaintiff HARRISON PETERSON, JR. ("Plaintiff") had a Zimmer Biomet AVL modular tibia implanted at the right knee. The implant suffered from defects that caused the implant to fail requiring a painful and costly surgery to extract the failed implant from the body and a subsequent surgery to replace it.

## PARTIES

2. Plaintiff HARRISON PETERSON, JR. is a citizen and resident of Houston, Texas, which is located in Harris County, Texas and is a part of the Southern District of Texas, U.S. District Court.

3. Defendant, BIOMET ORTHOPEDICS, LLC, is, and at all times relevant to this Complaint was, an Indiana limited liability company, with its principal place of business in Warsaw, Indiana. Biomet Orthopedics, LLC is, and at all times relevant to this Complaint was, a wholly owned subsidiary of Biomet, Inc., an Indiana corporation with its principal place of business in Warsaw, Indiana. Therefore, Biomet Orthopedics, LLC is a citizen of Indiana.

4. Defendant, ZIMMER BIOMET HOLDINGS, INC., is, and at all times relevant to this Complaint was, an Indiana corporation with its principal place of business in Warsaw, Indiana. Therefore, Zimmer Biomet Holdings, Inc. is a citizen of Indiana.

5. Defendant, BIOMET MANUFACTURING CORP., is, and at all times relevant to this Complaint was, an Indiana corporation with its principal place of business in Warsaw, Indiana. Therefore, Biomet Manufacturing Corp. is a citizen of Indiana.

6. Defendant, BIOMET U.S. RECONSTRUCTION, LLC, is, and at all times relevant to this Complaint was, an Indiana limited liability company, with its principal place of business in Warsaw, Indiana.  Biomet U.S. Reconstruction, LLC is, and at all times relevant to this Complaint was, a wholly owned subsidiary of Defendant, Biomet, Inc., an Indiana corporation with its principal place of business in Warsaw, Indiana. Therefore, Biomet U.S. Reconstruction, LLC is a citizen of Indiana.

7. Defendant, BIOMET INC., is, and at all times relevant to this Complaint was, an Indiana corporation with its principal place of business in Warsaw, Indiana. Therefore, Biomet, Inc. is a citizen of Indiana.

8. At all times mentioned, each Defendant was the representative, agent, employee, joint venturer, or alter ego of each of the other entities and in doing the things alleged herein was acting within the scope of its authority as such. Specifically, each Defendant was but an instrumentality or conduit of the other in the prosecution of a single venture, namely the design, promotion, and sale of the knee replacement system that is the subject of this litigation. Therefore, it would be inequitable for any Defendant to escape liability for an obligation incurred as much for that Defendant's benefit as for the other.

9. All Defendants are collectively referred to herein as "Biomet."

## JURISDICTION AND VENUE

10. This is a civil action of which U.S. District Court for the Southern District of Texas has original jurisdiction under 28 U.S.C. section 1332 because it is between citizens of different states (as described above) and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interest. The cost of a typical knee revision surgery by itself often exceeds this threshold amount, before additional damages are calculated for pain and suffering, revision complications, lost wages, permanent physical impairment, and diminished quality of life.

11. Venue is proper in the U.S. District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and all Defendants are subject to personal jurisdiction in the District.

12. As a direct and proximate result of Defendants placing the subject product into the stream of commerce, Plaintiff has suffered and will continue to suffer injuries including, without limitation, physical, mental and economic loss, pain and suffering, and will continue to experience such injuries indefinitely.

13. Plaintiff has incurred and will incur significant medical, hospital, monitoring, rehabilitative and pharmaceutical expenses.

14. At all times hereinafter mentioned, upon information and belief, Defendants were present and doing business in the State of Texas.

15. At all times hereinafter mentioned, upon information and belief, Defendants transacted, solicited and conducted business in the State of Texas and derived substantial revenue from such business.

16. At all times hereinafter mentioned, upon information and belief, Defendants expected or should have expected that its acts would have consequences in the State of Texas.

## FACTUAL ALLEGATIONS

17. On March 12, 2019, Plaintiff was admitted to Memorial Hermann Hospital - Memorial City due a failed right knee replacement with disengagement of axle from the tibial component. The surgery was performed by local Houston surgeon Larry L. Likover, M. D. Only a few weeks before, Dr. Likover performed a right knee replacement, however, Plaintiff suffered wound healing problems that disengaged his hinged femur from his right tibial component in a hinged knee. It was the opinion of Dr. Likover that this occurred because Plaintiff had a distal femoral replacement with absence of collateral ligaments causing the femur to disengage from the tibia when the knee became flexed. That situation required Plaintiff to have a revision to the tibial

component that locks the axle in situ, wherein Defendants' products were used.

18. During the surgery, Dr. Likover cleaned out the tibial canal and reamed for a 167 mm AVL modular tibia. A trial was done with a 12 mm bearing and it was determined that a 12 mm bearing would work. The tibial component was assembled with 10 mm augments underneath the tibial component and they were cemented in place. A 67 mm AVL modular tibia was inserted in place and the axle was locked in place. The 12 mm bearing allowed full range of motion of the knee. The knee was closed and Plaintiff was taken to the recovery room in excellent condition.

19. The following implants were used:

|     | **Description:** | **Manufacturer:** | **Number:** |
| --- | --- | --- | --- |
| a.  | Tibial Bearing 12 mm | Biomet | 161068 |
| b.  | Tibial Augment 10 mm | Biomet | 150426 |
| c.  | Axel 10 mm | Biomet | 150480 |
| d.  | Locking Pin 10 mm | Biomet | 150478 |
| e.  | AVL Yoke 12 mm | Biomet | 161075 |
| f.  | Tibial Base with Plug 678 mm | Biomet | 161065 |
| g.  | ABL Tibial Lock Ring | Biomet | 161073 |
| h.  | Poly Tibial Bushing Set | Biomet | 161071 |
| i.  | Femoral Bushings Set | Biomet | 150477 |

20. In August of 2019, Plaintiff returned to Dr. Likover. At that time the piston disengaged from the tibial component and it was determined by X-ray that the locking nut was fractured. Dr. Likover determined that Plaintiff required a new locking nut to hold his knee together. On August 14, 2019, Plaintiff again underwent surgery at Memorial Hermann Hospital - Memorial

City due to his failed Biomet knee implant and as a result of the defective design, manufacture and composition of the locking nut.   It was observed during surgery that the locking nut, which holds the piston in place, was broken into two pieces.  Such pieces were removed by Dr. Likover from the knee joint and a 16 mm bearing was utilized along with a 16 mm AVL yoke.  The new locking nut was placed in its appropriate position, locking the piston down.   Plaintiff was taken to recovery in good condition.

21.As a direct and proximate result of the failure of the Biomet locking nut and Biomet's wrongful conduct, Plaintiff sustained and continues to suffer economic damages (including medical and hospital expenses), severe and possibly permanent injuries, pain, suffering and emotional distress. As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial, but which will far exceed $75,000.00 jurisdictional minimum of this court.

## COUNT 1 - NEGLIGENCE

22.Plaintiff repeats and reiterates the allegations previously set forth herein.

23.At all times material hereto, Defendants had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspection, packaging, promotion marketing, distribution, labeling and/or sale of the subject product.

24.Defendants breached their duty of reasonable care of to Plaintiff in that Defendants negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

25.Plaintiff's injuries and damages, as alleged herein, were and are the direct and proximate result of the carelessness and negligence of Defendants.

26.Defendants knew or should have known that consumers such as Plaintiff would

foreseeably suffer injury as a result of Defendants' failure to exercise reasonable and ordinary care.

27. The injuries sustained by Plaintiff were caused by or were contributed to by Defendants' negligence, recklessness and conscious disregard for the safety of the consumers and the public, including Plaintiff, on the part of Defendants in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product as being safe and effective for the purposes intended and by inducing the public, including Plaintiff, to believe that the subject product was safe and effective for its intended purposes.

28. As a proximate result of the aforementioned negligence of Defendants, Plaintiff suffered personal injuries and harm, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses, require medical monitoring and will be required to pay for additional necessary healthcare; attention and services, along with additional incidental and related expenses to monitor Plaintiff's condition.

29. As alleged herein, as a direct and proximate result of Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering, including but not limited to a revision surgery. Plaintiff incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff also suffered a loss of future economic opportunity. Plaintiff has been physically and emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual damages from Defendants, as alleged herein.

## **COUNT 2 - STRICT LIABILITY**

30. Plaintiff repeats and reiterates the allegations previously set forth herein.

31. Defendants designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled and/or sold the subject product in a condition which rendered it unreasonably dangerous due to its propensity to fail.

32. The subject product manufactured and/or supplied by Defendants was defective in its manufacture or construction in that, when it left the hands of Defendants, it deviated in a material way from Defendants' manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design standards.

33. The subject product manufactured and/or supplied by Defendants was defective in design in that, when it left the hands of Defendants, the foreseeable risks exceeded the benefits associated with the design and/or its manufacturing.

34. Alternatively, the subject product supplied by Defendants was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

35. The subject product was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risk and reactions associated with the subject product, notwithstanding Defendants knowledge of such risks and reactions.

36. The aforementioned defects existed when Defendants placed the subject product into the stream of commerce.

37. Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

38. By engaging in the aforesaid conduct, Defendants are strictly liable to Plaintiff.

39. As alleged herein, as a direct and proximate result of Defendants' negligence and wrongful conduct, and the unreasonable dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual damages from Defendants, as alleged herein.

### COUNT 3 - BREACH OF EXPRESS WARRANTY

40. Plaintiff repeats and reiterates the allegations previously set forth herein.

41. Defendants expressly warranted to Plaintiff that the subject product was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for it intended use.

42. At the time of the making of the express warranties, Defendants knew or should have known of the purpose for which the subject product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

43. At the time of the making of the express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue. in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

44. Plaintiff purchased and used the subject product for its intended purpose.

9

45. Plaintiff relied on Defendants' express warranties.

46. Defendants breached said express warranties in that the subject product was not safe and fit for its intended use and, in fact, caused debilitating injuries.

47. As alleged herein, as a direct and proximate result of Defendants' breach of express warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in he future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual damages from Defendants, as alleged herein.

## COUNT 4 - BREACH OF IMPLIED WARRANTIES

48. Plaintiff repeats and reiterates the allegations previously set forth herein.

49. Defendants designed, manufactured, marketed, distributed, supplied and sold the subject product.

50. At the time that Defendants manufactured, marketed, distributed, supplied, and/or sold the subject product, it knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use. Plaintiff purchased and used the subject product for its intended purpose.

51. Due to Defendants' wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with the subject product until after Plaintiff used it.

52. Contrary to the implied warranty for the subject product, the subject product was not of merchantable quality and was not safe or fit for its intended uses and purposes.

53. As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally an economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual damages from Defendants, as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. Past and future medical, permanency and incidental expenses, according to proof;

2. Past and future general damages for pain and suffering, according to proof;

3. Past and future general damages for impairment, according to proof;

4. Past and future general damages for mental anguish, according to proof;

5. Prejudgment and post judgment interest;

6. Costs to bring this action; and,

7. Such other and further relief as the court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action.

Respectfully Submitted,

*/s/ Jack Todd Ivey*
Jack Todd Ivey
Attorney-in-Charge
Texas Bar No. 00785985
Southern District I.D. No. 17458
11111 Katy Freeway, Suite 700
Houston, Texas 77079
713/225-0015 (Telephone)
713/225-5313 (Facsimile)
Email: contact@iveylawfirm.com

OF COUNSEL:

IVEY LAW FIRM, P.C.